**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| STEVEN B.,[1] | : | Case No. 2:22-cv-02426 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits and Supplemental

Security Income in January 2019. Plaintiff's claims were denied initially and upon

reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge

(ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a

"disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's

request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since August 2, 2018. At that time, he was thirty-six years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security Regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," ECF No. 8) is summarized in the ALJ's decision (*id.* at PageID 57-84), Plaintiff's Statement of Errors ("SE," ECF No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," ECF No. 11), and Plaintiff's Reply Memorandum ("Reply," ECF No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:    Plaintiff has not engaged in substantial gainful activity since August 2, 2018, the alleged onset date.

Step 2:    He has the severe impairments of cervical and lumbar degenerative disc disease; status-post left ankle and foot fractures with degenerative joint disease of the left foot; chronic liver disease with ascites and portal vein hypertension; chronic kidney disease; obesity; depression; anxiety; mild cognitive impairment; and polysubstance abuse.

| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
|---|---|
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "occasional climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, and crawling, but never crouching; no exposure to hazardous moving machinery or unprotected heights; limited to receiving, comprehending, and executing simple routine tasks with occasional contact with others and occasional changes in the work setting." |
| | He is unable to perform any of his past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. |

(Doc. 8-2 at PageID 61-84.) These findings led the ALJ to conclude that Plaintiff does

not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 84.)

## B.     State Agency Psychological Consultant Cindy Matyi, Ph.D.

State agency psychological consultant Dr. Matyi reviewed the record at the

reconsideration level and completed a mental RFC assessment in November 2019. (AR,

ECF No. 8-3 at PageID 190-91, 195-97.) Dr. Matyi opined that Plaintiff was mildly

impaired in the "paragraph B" area of understanding, remembering, or applying

information. (*Id.* at PageID 191.) Dr. Matyi found moderate impairment in Plaintiff's

ability to interact with others, adapt or manage oneself, and concentrate, persist, or

maintain pace. (*Id.*) Dr. Matyi concluded that Plaintiff's mental impairments were

"severe." (*Id.* at PageID 190-91.) Dr. Matyi opined that Plaintiff was able to comprehend

5

and remember "a variety of task instructions" and that he could "carry out simple and occasional detailed/complex tasks, maintain attention, make simple decisions, and adequately adhere to a schedule." (*Id.* at PageID 195-96.) According to Dr. Matyi, Plaintiff could "relate adequately on a superficial basis in a setting that entails few interaction demands." (*Id.* at PageID 196.) Dr. Matyi also opined that Plaintiff could adapt to a "routine, predictable setting." (*Id.* at PageID 197.)

The ALJ found that Dr. Matyi's findings were "generally persuasive." (AR, ECF No. 8-2 at PageID 80.) The ALJ explained:

> Dr. Matyi did not have the opportunity to examine the claimant or to review the medical evidence of record in its entirety. Her assessment that [Plaintiff] would be limited to superficial interaction is not consistent with the record as a whole, such that the claimant often appeared cooperative, pleasant, and/or nice (See, e.g., Ex. 1F/44; 3F/57-58, 82; 5F/2, 8-9; 6F/7, 11; 14F/8-13; 17F/13, 23; 20F/13; and 22F/11, 15). However, Dr. Matyi has program knowledge as well as specialized training and experience in the field of psychology. Her assessment, except as noted above, is generally consistent with the medical evidence of record, including evidence received after the hearing level. Despite some positive findings, [Plaintiff] often had unremarkable findings with regard to orientation, mood, and affect, with at least fair memory, concentration, cognition, insight, and judgment observed on multiple occasions (See, e.g., Ex. 1F/7, 28; 2F/13, 19; 3F/28, 57-58; 5F/2-9; 6F/7, 28; 15F/45; 17F/4; 22F/11, 15; and 26F/4). Testing and observations in December 2020 suggested only mild cognitive impairment (Ex. 26F/3-5). Dr. Matyi's assessment is also consistent with [Plaintiff's] relatively conservative recent treatment for his mental impairments, with no inpatient treatment, emergency room visits, partial hospitalizations, or hospitalizations specifically for his mental impairments during the period since the alleged onset date (See, generally, Ex. 1F-28F).

(*Id.* at PageID 79-80.)

C. **Primary Care Physician Nina Hourmouzis, M.D.**

Dr. Hourmouzis authored a narrative letter at Plaintiff's request in February 2021.

(AR, ECF No. 8-9 at PageID 1542.) Dr. Hourmouzis wrote:

> [Plaintiff] has chronic pain and persistent issues regarding a history of a left
> ankle fracture. He has had [three] surgeries and he has persistent pain
> despite this. He also has a stress fracture of the left foot. He has both
> cervical and lumbar degenerative arthritis with radiculopathy. These issues
> preclude him from being able to sit, stand, bend, push, pull, lift, or perform
> any type of upper or lower physical activities because of the significant
> pain and limitation of range of motion. He is on medications for this pain
> and he also sees the pain management clinic, for which she [sic] receives
> IV medications. Despite all of this, he continues [to] have significant issues
> with pain and mobility.

(*Id.*)

Dr. Hourmouzis also completed a physical capacities assessment form in February

2021. (AR, ECF No. 8-9 at PageID 1539-41.) Dr. Hourmouzis opined that Plaintiff could

rarely lift and carry up to twenty pounds, stand or walk for only fifteen minutes at a

time—for a total of up to ninety minutes in an eight-hour workday, and sit no more than

thirty minutes at a time, although he could do so for a total of twelve hours. (*Id.* at

PageID 1539-40.) Dr. Hourmouzis also opined that Plaintiff could frequently handle and

finger bilaterally; occasionally reach with the right arm, bend, crouch, and squat; rarely

reach with the left arm; and never crawl or climb steps or ladders. (*Id.*) According to Dr.

Hourmouzis, Plaintiff was able to reach above shoulder level, and he could use his right

foot for repetitive movements such as operating foot controls, although he was unable to

do so with the left. (*Id.* at PageID 1540.) Dr. Hourmouzis indicated that Plaintiff's

condition would likely deteriorate "if placed under stress, particularly stress associated

7

with a job." (*Id.*) Dr. Hourmouzis also indicated that Plaintiff was likely to miss work twice or more per month. (*Id.* at PageID 1541.) Dr. Hourmouzis noted that she had reviewed Plaintiff's medical records and treatment notes prior to completing the form, and she attributed her assessment to Plaintiff's diagnoses of a left ankle fracture, left foot stress fracture, cervical radiculopathy with intermittent left arm pain, and a history of lumbar radiculopathy and disc bulging which caused difficulty sitting and standing for prolonged periods. (*Id.*)

The ALJ did not specifically state the persuasiveness of Dr. Hourmouzis' opinion. (AR, ECF No. 8-2 at PageID 81.) The relevant portion of the ALJ's decision appears to contain a typographical omission in the final sentence of the ALJ's analysis. (*Id.*) The ALJ evaluated Dr. Hourmouzis' opinion as follows:

> Dr. Hourmouzis had the opportunity to participate in [Plaintiff's] care. However, her February 2021 assessments, which were provided the same day, are not consistent with each other. For example, in one assessment, she stated [Plaintiff] is precluded from lifting, sitting, standing, and bending (Ex. 28F/1). However, in the other assessment, she indicated [Plaintiff] could rarely lift up to up to 20 pounds, stand 15 minutes at a time for a total of 1.5 hours of standing in an eight hour workday, sit for 30 minutes at a time for a total of 12 hours in an eight-hour workday, and occasionally bend (Ex. 27F/1-2). Her assessments are not well supported by her own examination findings. For example, Dr. Hourmouzis noted on multiple occasions that [Plaintiff] had no obvious musculoskeletal deformities and/or focal neurological deficits as well as unremarkable findings upon examination of the abdomen (Ex. 2F/7, 13, 19; and 17F/13-33). In February 2021, she noted [Plaintiff] was able to ambulate (Ex. 17F/5). [Plaintiff] had unremarkable findings upon examination of the abdomen with no distress or neurological deficits (Ex. 17F/5).

> Dr. Hourmouzis' assessments are also inconsistent with the medical evidence of record as a whole. In April 2019, a CT scan of the cervical spine showed only mild degenerative findings (Ex. 15F/53). The medical evidence of record does not document ongoing use of an assistive device to

> aid ambulation, and during multiple evaluations, the [Plaintiff] had unassisted ambulation and/or a normal gait (See, e.g., Ex. 6F/3, 7; 10F/7; 14F/6; 15F/45, 63; 17F/9, 28; 18F/8; 20F/13, 18; and 26F/3-4). During orthopedic evaluations, [Plaintiff] generally had intact strength in the right lower extremity, with intact left lower extremity strength observed in April and May 2019 (Ex. 6F/3-4 and 14F/19-20; See, generally, Ex. 6F and 14F). He had intact strength of all extremities during a June 2019 chiropractic examination with no abnormalities on heel or toe walking (Ex. 19F/2-3). [Plaintiff] had intact left lower extremity strength during podiatric evaluations from November 2019 through January 2020 (Ex. 20F/1-18). During neurological testing in December 2020, [Plaintiff] had normal range of motion and strength upon examination of all extremities, as well as normal muscle bulk and tone, sensation, and coordination (Ex. 26F/3-4).

(*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff contends that the ALJ failed to properly evaluate and account for the opinions of State agency psychological consultant Dr. Matyi and treating physician Dr. Hourmouzis. (SE, ECF No. 9 at PageID 1552, 1556.) For the reasons discussed below, these contentions are not well-taken.

### A.    Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[3] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

**B.    The ALJ Did Not Reversibly Err in Evaluating the Findings of State Agency Psychological Consultant Dr. Matyi**

Plaintiff challenges the ALJ's assessment of Dr. Matyi's findings. Specifically, Plaintiff claims that the ALJ erred by failing to explain why he rejected Dr. Matyi's limitation for superficial interaction and instead limited Plaintiff to occasional contact with others. (SE, ECF No. 9 at PageID 1553-56; Reply, ECF No. 12 at PageID 1578-79).

Plaintiff's contention is not well-taken. The ALJ complied with applicable regulations when he found that Dr. Matyi's findings were generally persuasive—but rejected the limitation for superficial interaction—and his analysis is supported by substantial evidence. The ALJ found that the limitation was "not consistent with the record as a whole, such that the claimant often appeared cooperative, pleasant, and/or nice . . . ." (AR, ECF No. 8-2 at PageID 79.) The ALJ cited the following records that documented such findings:

- A hospitalist indicated in January 2019 that Plaintiff presented as pleasant and cooperative and that he was "interactive and very conversational" (AR, ECF No. 8-7 at PageID 455);

- When he was treated in the emergency department for leg pain after a fall in July 2018, Plaintiff presented as anxious but his providers otherwise documented cooperative behavior, full orientation, and normal speech (*Id.* at PageID 750-51, 775);

- During behavioral health visits in March and May of 2019, Plaintiff exhibited a mildly depressed mood with a reactive affect, but he was otherwise cooperative with normal speech (AR, ECF No. 8-8 at PageID 926, ECF No. 8-8 at PageID 1441);

- In November 2018, February 2019, September 2019, October 2019, Plaintiff's orthopedist documented a normal affect and a pleasant and cooperative mood (*Id.* at PageID 946, 950, 1093, 1097);

- Plaintiff's primary care provider Dr. Hourmouzis indicated in October 2019 that Plaintiff exhibited a normal affect—with no significant anxiety or depression (*Id.* at PageID 1292-93);

- Dr. Hourmouzis indicated in December 2019 that Plaintiff appeared "calm and comfortable" upon examination (*Id.* at PageID 1302);

- Plaintiff's podiatrist reported in December 2019 that Plaintiff exhibited a normal mood and affect (AR, ECF No. 8-9 at PageID 1404); and

- During a behavioral health visit in January 2020, Plaintiff exhibited a normal mood, a full-ranged affect, a normal demeanor, and normal speech. (*Id.* at PageID 1437.)

(AR, ECF No. 8-2 at PageID 79.)

This evidence supports the ALJ's determination that Plaintiff is able to maintain quality interactions with others and that a limitation to superficial interaction is unnecessary. The ALJ's citation to records showing that Plaintiff often has positive interactions with others is sufficient to explain why he rejected Dr. Matyi's limitation.

Plaintiff contends that "[j]ust because he was cooperative with medical professionals does not mean that he does not have limitations when interacting with others." (SE, ECF No. 9 at PageID 1554.) Plaintiff also asserts that the ALJ erred because he "rejected the limitation to superficial interaction, and instead elected to limit [Plaintiff] to occasional interaction with others." (Reply, ECF No. 12 at PageID 1578.) Finally, Plaintiff challenges "the ALJ's complete failure to explain why the evidence contradicted a limitation restricting [Plaintiff] to superficial interaction, and in turn supported a limitation to occasional interaction." (*Id.* at PageID 1579.)

These contentions are not well-taken. As discussed above, the ALJ provided reasons—supported by substantial evidence—for why he rejected Dr. Matyi's limitation

for superficial interaction. The ALJ also discussed Plaintiff's social functioning

elsewhere in the decision and explained why he limited Plaintiff to occasional interaction.

For example, the ALJ found at Step Three that Plaintiff has moderate limitation in

the "Paragraph B" area of interacting with others. (*Id.*, citing AR, ECF No. 8-2 at PageID

64-65.) The ALJ acknowledged Plaintiff's subjective complaints about being around

others, as well as being isolated. (AR, ECF No. 8-2 at PageID 64.) The ALJ cited to

mental status examinations that showed abnormalities of mood and/or affect, guarded and

withdrawn behavior, agitation, uncooperativeness, and avoidant eye contact. (*Id.* at

PageID 64-65.) The ALJ balanced this evidence with medical records that documented

Plaintiff's abilities in this area, such as being able to interact with others at the skilled

nursing facility, being able to go to public places, having new friends, and regularly

talking to some family members. (*Id.* at PageID 65.) The ALJ also cited normal mental

status findings which included appropriate moods, no abnormalities of affect, appropriate

behavior, a cooperative and/or pleasant demeanor, and interactional and conversational

behavior. (*Id.*)

Additionally, the ALJ provided a detailed summary of Plaintiff's medical records

and mental health treatment history in the RFC analysis. (AR, ECF No. 8-2 at PageID 75-

78.) Here, the ALJ discussed Plaintiff's subjective complaints of depression, anxiety, and

mild cognitive issues. (*Id.*) He also discussed Plaintiff's daily activities, including

Plaintiff's complaints of difficulties with several activities and his tendency to stay home,

as well as Plaintiff's reports of being able to care for personal hygiene and keeping in

contact with friends and family. (*Id.* at PageID 78-79.) The ALJ acknowledged many of

the abnormal objective examination findings which included a depressed mood, a constricted or anxious affect, guarded and withdrawn behavior, avoidant eye contact, and distractibility on some occasions. (*Id.* at PageID 75-78.) The ALJ compared these findings to other examinations which showed no significant depression or anxiety, a normal mood and/or affect, pleasant and cooperative behavior, normal speech, normal eye contact, logical thoughts, and no ongoing complaints of suicidal ideation, homicidal ideation, or psychosis. (*Id.*) The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity. (AR, ECF No. 8-2 at PageID 67, 75.) He concluded that to account for the evidence of Plaintiff's anxiety, depression, mild cognitive impairment, and polysubstance abuse, Plaintiff was limited to carrying out the range of simple tasks in the RFC, and occasional contact with others. (*Id.* at PageID 82.)

The fact that the ALJ rejected the superficial interaction limitation suggested by Dr. Matyi—and then included a different limitation in the RFC to account for Plaintiff's social impairment—is not an error. "The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); citing 20 C.F.R. § 404.1546(c). An ALJ is required to consider prior administrative findings when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *See Poe*, 342 F. App'x at 156-57 (6th Cir. 2009); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). The ALJ's explanation shows that he considered whether Plaintiff required a limitation to superficial social interaction. Further, the ALJ applied the required legal framework when he evaluated Dr. Matyi's medical opinion and his conclusions are supported by substantial

14

evidence. *See* 20 C.F.R. § 404.1520c. The ALJ's decision to include a different limitation to account for Plaintiff's moderate impairment in social functioning is within the permissible "zone of choice" available to Defendant, and because the ALJ's findings are supported by substantial evidence they must be affirmed. *Mullen,* 800 F.2d at 545.

## B.    The ALJ Did Not Reversibly Err in Evaluating Dr. Hourmouzis' Opinion

Plaintiff asserts that the ALJ erred because he failed to provide an "actual statement concerning the persuasiveness of Dr. Hourmouzis' opinion." (SSE, ECF No. 9 at PageID 1557.) Plaintiff further asserts that, even assuming the ALJ intended to find Dr. Hourmouzis' opinion not persuasive, the ALJ's conclusions—that Dr. Hourmouzis' opinions are not consistent with each other, are not supported by her findings, and are not consistent with the medical evidence of record as a whole—"take a very narrow view and are not reflective of the actual record." (*Id.* at PageID 1558.)

These contentions are not well-taken. As an initial matter, the decision does appear to contain a typographical omission, but it is a harmless error. Courts in the Sixth Circuit have held that a typographical or scrivener's error is harmless when the ALJ's meaning is clear in context. *Calkins v. Sec'y of Health & Hum. Servs.,* No. 85-5685, 1986 WL 17083, *2 (6th Cir. May 7, 1986) (holding that the district court properly "examined the opinion as a whole to interpret the true meaning of the ALJ's findings" and was not required to "ignore the real finding of the ALJ and instead blindly follow the transcriber's version of the finding."); *Barnes v. Comm'r of Soc. Sec.,* No. 16-13714, 2018 WL 1474693 (E.D. Mich. Mar. 6, 2018) (finding that scrivener's errors were harmless

because "the ALJ's true meaning is easily discernible for the analysis on each topic");

*Gomez v. Berryhill*, No. 3:18-cv-11738, 2019 WL 5680841, at *5 (E.D. Mich. June 11,

2019) (a typographical error did not require remand because context showed the ALJ's

actual meaning).

In this case, the ALJ's intended meaning is clear. The ALJ first summarized Dr.

Hourmouzis' opinions in the opinion evaluation section of the RFC analysis. (AR, ECF

No. 8-2 at PageID 81.) The ALJ began his evaluation of Dr. Hourmouzis' opinions in the

next paragraph and explained that Dr. Hourmouzis' opinions are inconsistent with each

other and are not well supported by Dr. Hourmouzis' examination findings. (*Id.*) In the

second paragraph of his evaluation, the ALJ further explained that Dr. Hourmouzis'

opinions are inconsistent with the medical evidence of record as a whole. (*Id.*) The final

sentence of this paragraph contains the omission, as it merely states: "Accordingly," (*Id.*)

But the Court agrees with Defendant's assertion about this issue: "[B]ecause the prior

two paragraphs find that the opinion was unsupported and inconsistent, and the opinion

was not adopted, the only reasonable interpretation is that the ALJ found the doctor's

opinion not persuasive." (Mem. In Opp., ECF No. 11 at PageID 1572.) Since the ALJ's

intended meaning is clear from the ALJ's analysis, the Court finds that the omission of

the concluding sentence constitutes a harmless error.

The Court further finds that the ALJ complied with applicable regulations when he

found that Dr. Hourmouzis' opinions are not persuasive, and his analysis is supported by

substantial evidence.

The ALJ addressed the supportability of Dr. Hourmouzis' opinions as required by 20 C.F.R. § 404.1520c(b)(2) and (c)(1). The ALJ explained that Dr. Hourmouzis' limitations were not "well supported by her own examination findings." (AR, ECF No. 8-2 at PageID 81.) The ALJ reasoned that on several occasions Dr. Hourmouzis had documented "no obvious musculoskeletal deformities and/or focal neurological deficits as well as unremarkable findings upon examination of the abdomen . . . ." (*Id*.) The ALJ also cited to Dr. Hourmouzis' notes in a February 2021 progress note that Plaintiff was able to ambulate and that a physical examination was unremarkable with no abdominal distress or neurological defects. (*Id.*)

The ALJ also addressed the consistency of Dr. Hourmouzis' opinions as required by 20 C.F.R. § 404.1520c(b)(2) and (c)(2). The ALJ concluded that Dr. Hourmouzis' assessments were "inconsistent with the medical evidence of record as a whole." (AR, ECF No. 8-2 at PageID 81.) The ALJ explained that a cervical spine CT scan showed only mild degenerative findings and that the medical evidence did not document consistent ambulation difficulties or ongoing use of an ambulation aid. (*Id.*) The ALJ cited to several other examinations that showed intact upper and lower extremity strength, no abnormalities with heel or toe walking, normal range of motion, and normal muscle bulk and tone, sensation, and coordination. (*Id.*) Because the ALJ's conclusions are supported by substantial evidence and comply with the regulations, the Court cannot reverse them.

Plaintiff argues that the ALJ's evaluation of Dr. Hourmouzis' opinions is not "reflective of the actual record" and that the ALJ "cherry-picked" the evidence. (SE, ECF

No. 9 at PageID 1559-61.) According to Plaintiff, "the medical evidence of record fully supports Dr. Hourmouzis' conclusions." (*Id.* at PageID 1559.) This argument is without merit.

The Sixth Circuit has acknowledged that improper cherry picking occurs when an ALJ selects portions of the medical record to support a conclusion "instead of performing a proper analysis of the medical evidence under agency regulations and controlling case law . . . ." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (citing *Germany–Johnson*, 313 F. App'x 771, 777 (6th Cir. 2008); *Boulis–Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011)). But allegations of impermissible cherry picking are "seldom successful because crediting [them] would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F. 3d 272, 284 (6th Cir. 2009).

Here, the ALJ did not substitute an impermissibly selective review of the record for a proper analysis of the medical evidence. Nor did he ignore significant objective medical evidence that supports Dr. Hourmouzis' opinion and Plaintiff's claims of disability. *See Minor*, 513 F. App'x at 433-38. As discussed above, the ALJ cited to several examples of examination findings and imaging reports to support his conclusion that Dr. Hourmouzis' opinions were not fully supported by her own findings and not fully consistent with the overall medical record. Additionally, the ALJ provided a detailed summary of Plaintiff's medical records for his physical impairments earlier in his RFC analysis discussion. (AR, ECF No. 8-2 at PageID 67-75.) The ALJ acknowledged Plaintiff's subjective complaints which included pain, numbness and tingling in the

18

extremities, difficulty with movements such as standing and walking, an inability to lift more than twenty pounds, and difficulty with several activities of daily living. (*Id.* at PageID 67.)

The ALJ also acknowledged Plaintiff's treatment history for his physical complaints. The ALJ cited cervical and lumbar spine imaging reports, and he acknowledged that a June 2020 lumbar spine MRI showed moderate advanced degenerative changes at the L4 through L5 level, with a left-sided disc extrusion and impingement upon the thecal sac. (AR, ECF No. 8-2 at PageID 69-70.) Significantly, the ALJ acknowledged that Plaintiff underwent left ankle surgery to repair a Maisonnueve fracture in August 2018, and that he required another surgery in May 2019—to remove all surgical hardware in the left ankle. (*Id.* at PageID 68-69.) The ALJ cited a September 2019 left ankle MRI which showed incomplete healing of the fracture, as well as a December 2019 left foot MRI which showed a fracture of the anterior-lateral tubercle of the tibia with nonunion, posttraumatic ossicles, and soft tissue swelling. (*Id.*)

The ALJ cited to many examination abnormalities such as cervical and lumbar tenderness to palpation, decreased spinal range of motion, positive straight leg raising on the left, left ankle pain and tenderness, and limited left ankle range of motion. (*Id.* at PageID 68-75.) The ALJ noted that Plaintiff exhibited many of these abnormalities prior to the alleged disability onset date and during the convalescence periods that followed his left ankle surgeries in August 2018 and May 2019, as well as after a motor vehicle accident in April 2019. (*Id.* at PageID 68-70.) The ALJ compared this evidence to many normal findings documented throughout the record, which included minimal to no spinal

19

pain upon examination, full range of motion of the spine and extremities, only slightly decreased (4/5) to normal strength in the extremities, normal reflexes, normal sensation with no numbness or tingling in the extremities, normal muscle tone and coordination, negative straight leg raising, and a normal or steady gait. (*Id.* at PageID 68-71.)

The ALJ also summarized the medical records and Plaintiff's treatment related to his chronic liver disease and chronic kidney disease. The ALJ acknowledged that Plaintiff was hospitalized twice in January 2019 for acute exacerbations of cirrhosis and kidney disease and that he subsequently resided at a skilled care facility, where he received physical and occupational therapy. (AR, ECF No. 8-2 at PageID 72-73.) The ALJ described Plaintiff's treatment since those hospitalizations and noted that Plaintiff's symptoms had generally improved. (*Id.* at PageID 73-74.) The ALJ cited examination abnormalities such as abdominal distension, ascites, and edema, as well as laboratory findings consistent with Stage I chronic kidney disease. (*Id.*) He also cited a June 2019 abdominal ultrasound that showed findings suggestive of underlying steatosis and cirrhosis with mild enlargement of the common duct. (*Id.* at PageID 73.) The ALJ compared this evidence to several examinations that showed no recurrent ascites, no organomegaly or guarding, no significant tenderness, no evidence of jaundice or edema, and no significant neurological deficits. (*Id.*). The ALJ also noted that the records showed no further evidence of hepatic failure or encephalopathy. (*Id.* at PageID 73-74.)

The ALJ therefore relied on substantial evidence to support his conclusions, which is evidence adequate to support his decision to find that Dr. Hourmozuis' opinions are not persuasive. Although the record contains some objective and clinical medical findings

20

that arguably provide support for Dr. Dr. Hourmozuis' opinions, the ALJ acknowledged and evaluated these findings in the decision, as discussed above. The ALJ compared these findings to contradictory examination findings and objective testing in the record, and he concluded that the balance of the evidence did not support Dr. Hourmozis' opinions. Moreover, as Defendant points out, the ALJ did not completely reject Dr. Hourmouzis' opinions: the ALJ found that Plaintiff was limited to a reduced range of sedentary work, which involves lifting no more than ten pounds at a time and no more than occasional walking and standing. *See* 20 C.F.R. § 404.1567(a). The Court concludes that the ALJ based his decision to find Dr. Hourmouzis's opinions not persuasive upon substantial evidence in the record. Therefore, that decision cannot be reversed.

Finally, Plaintiff takes issue with the ALJ's additional reason for finding Dr. Hourmozis' opinions not persuasive: that the letter and physical capacities assessment form provided by Dr. Hourmouzis are internally inconsistent. (SE, ECF No. 9 at 1558-59, citing AR, ECF No. 8-2 at PageID 81.) Plaintiff proposes an alternate reading of these documents and contends that the ALJ's analysis is "not reflective of the actual record." (SE, ECF No. 9 at PageID 1558-59.) This argument is not persuasive. The substantial evidence standard is met if "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). The ALJ provided a reasonable explanation for his interpretation of the opinions, and he considered this inconsistency as only one factor in his consideration of Dr. Hourmouzis' opinions, pursuant to 20 C.F.R. § 404.1520c(c)(5). (An ALJ "will consider other factors

that tend to support or contradict a medical opinion or prior administrative medical finding.") The ALJ's comparison of Dr. Hourmouzis' letter with the form that she completed complies with the applicable legal requirements and does not warrant reversal.

## VI.    CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework to evaluate the opinions of Dr. Matyi and Dr. Hourmouzis, and substantial evidence supports his conclusions. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (ECF No. 9) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.

*s/Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge